Jack Meyerson, Esq. (No. 781990)
Matthew Miller, Esq. (No. 043462010)
MEYERSON & O'NEILL
1600 Market Street, Suite 1305
Philadelphia, PA 19103
(215) 972-1376
jmeyerson@meyersonlawfirm.com
mmiller@meyersonlawfirm.com

| | |
|---|---|
| JEREE WEBSTER,<br>2071 E. Monmouth St.<br>Philadelphia, PA 19134 | UNITED STATES DISTRICT<br>COURT FOR THE DISTRICT<br>OF NEW JERSEY, NEWARK |
| Plaintiff, | |
| v. | Civil Action No. |
| UNITED STATES OF AMERICA, | |
| MARTIN GIMOVSKY, M.D.,<br>201 Lyons Avenue at Osborne Terrace<br>Newark, NJ 07112 | ELECTRONICALLY FILED |
| AFAMEFUNE ONEJEME, M.D.,<br>741 Broadway<br>Newark, NJ 07104 | JURY TRIAL DEMANDED<br>FOR ALL DEFENDANTS<br>EXCEPT AS TO "FTCA"<br>CLAIMS AGAINST UNITED |
| SUSAN GORSKI, R.D.M.S.,<br>201 Lyons Avenue at Osborne Terrace<br>Newark, NJ 07112 | STATES |
| NEWARK BETH ISRAEL MEDICAL CENTER,<br>201 Lyons Avenue at Osborne Terrace<br>Newark, NJ 07112 | |
| RWJ BARNABAS HEALTH,<br>99 Highway 37 West<br>Toms River, NJ 06755 | |
| JOHN/JANE DOES (1-10), | |
| and | |
| ABC EMPLOYERS (1-10)<br>Defendants. | |

## COMPLAINT

Plaintiff, Jeree Webster, in her own right, by and through her undersigned counsel, files this Complaint against the above-named Defendants and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for medical malpractice and negligent infliction of emotional distress claims arising out of the loss of Plaintiff Jeree Webster's pregnancy due to cervical insufficiency on August 21, 2019 due to negligent and deficient prenatal care performed by Dr. Afamefune Onejeme and other agents and employees at Newark Community Health Centers, Inc. ("NCHC"), a Federally Qualified Health Center, and by Defendants Dr. Martin Gimovsky, Susan Gorski, R.D.M.S., and other agents and employees at Newark Beth Israel Medical Center ("NBIMC") during the period of June 15, 2019 to August 17, 2019.

2.      Dr. Afamefune Onejeme breached the standard of care by negligently failing to obtain and/or document Plaintiff's obstetric history of cervical insufficiency and prior successful cerclage placement at either his first or second prenatal exams of Plaintiff on June 15, 2019 and July 20, 2019, respectively, despite the fact that Plaintiff's previous successful pregnancy and cerclage placement had been monitored and documented by providers at NCHC.

3.      Dr. Onejeme breached the standard of care by negligently failing to refer Plaintiff for prompt cerclage placement at 12-14 weeks of pregnancy as would have and should have been indicated by her obstetric history.

4.      Defendant Dr. Martin Gimovsky breached the standard of care by negligently failing to obtain and/or document Plaintiff's obstetric history of cervical insufficiency when during Plaintiff's July 30, 2019 sonogram exam, despite the fact that Plaintiff's prior cerclage

placement due to cervical insufficiency, which resulted in a successful pregnancy, had been performed by providers at NBIMC.

5.    Defendant Dr. Gimovsky breached the standard of care by negligently failing to refer Plaintiff for prompt cerclage placement at 12 weeks pregnancy as would have and should have been indicated by her obstetric history and the results of the sonogram taken on July 30, 2019.

6.    Defendant Susan Gorski breached the standard of care by failing to notate or act upon Plaintiff's history of cerclage and request for cerclage during a first trimester sonogram.

7.    As a result of Defendants' failure to adequately document and evaluate Plaintiff's obstetric history and failure to recommend early cerclage placement, as was indicated by Plaintiff's obstetric history, sonogram results and other prenatal examinations, Plaintiff lost her pregnancy on August 21, 2019.

8.    Additionally, Plaintiff has suffered and continues to suffer acute psychological and emotional stress stemming from the inevitable abortion of a viable baby girl on August 21, 2019, that would not have occurred but for Defendants' negligence.

**PARTIES**

9.    Plaintiff JEREE WEBSTER is an adult resident of the State of Pennsylvania domiciled at 2071 Monmouth St. in Philadelphia, PA 19134.

10.    Defendant AFAMEFUNE ONEJEME, M.D., is a physician practicing obstetrics and gynecology, who at all times material hereto, practiced medicine as an independent contractor with Newark Community Health Center.

11.     Defendant UNITED STATES OF AMERICA is a sovereign governmental body responsible for the independent establishments of the United States and corporations primarily acting as instrumentalities or agencies of the United States.

12.     Defendant MARTIN GIMOVSKY, M.D., is a board-certified physician in obstetrics and gynecology and in maternal fetal medicine, specializing in the management of high risk pregnancy who, at all relevant times hereto, practiced medicine as an Ob/Gyn and maternal fetal medicine specialist at Defendant NBIMC.

13.     Defendant SUSAN GORSKI, R.D.M.S., is a registered diagnostic medical sonographer who, at all times relevant hereto, practiced sonography as an employee of Defendant NBIMC.

14.     Defendant NEWARK BETH ISRAEL MEDICAL CENTER is a non-profit corporation organized and existing under the laws of New Jersey for the purpose of providing medical care and treatment, including surgical care. Its principal place of business is located at 201 Lyons Avenue at Osborne Terrace in Newark, NJ 07112.

15.     Defendant RWJ BARNABAS HEALTH is a non-profit corporation organized and existing under the laws of New Jersey for the purpose of providing medical care and treatment.  Defendant RWJ Barnabas Health, Inc. is the owner and/or parent company of Defendant NBIMC.  Its principal address is 99 Highway 37 West, Toms River, NJ 08755.

16.     At all times material hereto Defendants NBIMC, RWJ BARNABAS HEALTH and ABC EMPLOYERS (1-10) were or may have been the employers of Defendant GIMOVSKY as well as other individuals involved with the healthcare, clerical, and administrative duties with respect to patient care.  Defendants NBIMC, RWJ BARNABAS HEALTH and ABC EMPLOYERS (1-10) are vicariously liable for the acts and omissions of all

3

of these individuals, each of whom was acting within the course and scope of the employment relationship.

17.     Defendants John/Jane Does (1-10) are fictitious names used to designate doctors, nurses, and other healthcare providers who are employees and/or ostensible agents of Defendants NBIMC, RWJ BARNABAS HEALTH and ABC EMPLOYERS (1-10) charged with the responsibility of diagnosing and treating Plaintiff Webster's condition and/or who rendered, or should have rendered, care and treatment to Plaintiff Webster, but did so, or did not do so, in a manner that was beneath the standard of care. The pseudonymous designations are being used to preserve claims against these individuals, who will be named more fully if and when their identities are uncovered.

18.     Defendants ABC Employers (1-10) are fictitious names used to designate hospitals, medical practices, corporations, partnerships, sole proprietorships, fictitious names, billing entities and/or other legal or non-legal entities which employed some or all of the defendants named herein, including but not limited to, Defendant Dr. Gimovsky and the individual John/Jane Doe Defendants, each of whom was acting within the course and scope of the employment relationship. The defendant ABC Employers are vicariously liable for the negligence and other tortious conduct of the individual defendants. The pseudonymous designations are being used to preserve claims against these entities, who will be named more fully if and when their identities are uncovered.

## JURISDICTION AND VENUE

19.     This action arises under the Federal Tort Claims Act, 28 U.S.C. §§2671-2680. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1346(b).

20.     Venue is proper in the District of New Jersey, pursuant to 28 U.S.C. §§1391(a)(1) and (a)(2) because it is the judicial district in which the events or omissions giving rise to Plaintiff's claim occurred.

21.     On or about February 13, 2020, pursuant 28 U.S.C. §2675(a), Plaintiff presented a claim in writing to the United States Department of Health and Human Services, Office of General Counsel, General Law Division, 330 C Street, SW, Switzer Building, Suite 2600, Washington, D.C. 20201.

22.     On or about October 5, 2020, said Department of Health and Human Services denied Plaintiff's claim.

23.     This action was brought within six months after the date of mailing of the Notice of Denial of Plaintiff's claim and is timely pursuant to 28 U.S.C. 2401(b).

24.     Plaintiff has, in all respects, complied with all of the statutory prerequisites for the commencement and prosecution of this action.

25.     This Court has jurisdiction over the Defendants MARTIN GIMOVSKY, MD, SUSAN GORSKI, RDMS, NEWARK BETH ISRAEL MEDICAL CENTER, and RWJ BARNABAS HEALTH pursuant to §1367 of Title 28 and pursuant to the doctrine of supplemental jurisdiction.

## OPERATIVE FACTS

26.     In May 2019, Plaintiff Jeree Webster, a healthy 26-year-old woman, became pregnant.

27.     This desired pregnancy was her fifth pregnancy. Her prior obstetric history was as follows:

a.      Normal spontaneous vaginal delivery (NSVD) of a boy in 2011;

b.      Ectopic pregnancy in 2011-2012;

c.      Miscarriage at 5 months in 2012-2013;

d.      Spontaneous vaginal delivery (SVD) of a boy on June 21, 2016.

28.     Delivery of Plaintiff's son in 2016 occurred at St. Barnabas Medical Center after Dr. Munir Nazir, attending obstetrician at NBIMC with the Maternal Fetal Medicine department, performed a McDonald cerclage placement which enabled Plaintiff deliver a healthy son after a full-term pregnancy.

29.     This cerclage placement was performed after it was determined at Newark Beth Israel by sonogram and a subsequent physical exam that Plaintiff had a shortened cervical length, findings consistent with cervical insufficiency and her prior history of cervical dilation.

30.     Plaintiff was 5 weeks pregnant when she first presented at NHCH on June 15, 2019 for prenatal care.

31.     Despite Plaintiff's extensive treatment history at NHCH, no documentation or notation was made of Plaintiff's history of cervical insufficiency and cerclage placement during the June 15, 2019 exam performed by Defendant Dr. Onejeme.

32.     Moreover, Plaintiff verbally informed Dr. Onejeme and other providers at NCHC of her history of cerclage placement at the June 15, 2019 exam.

33.     On July 20, 2019, Plaintiff presented at NHCH accompanied by her husband and requested to be referred for cerclage placement. Dr. Onejeme made a note of her prior cerclage placement in his OB note but did not document the same on the exam report.

34.     Rather than referring Plaintiff for cerclage placement as would have and should have been indicated by her obstetric history, Dr. Onejeme referred her to maternal fetal medicine for chronic hypertension.

35.     On July 30, 2019, Plaintiff presented at NBIMC for a first trimester screening which involved a sonogram performed and reported by Defendant Susan Gorski.

36.     During this July 30, 2019 exam and sonogram Plaintiff expressed to Defendant Susan Gorski her interest in cerclage placement and requested to speak to the physician who performed her prior cerclage placement, Dr. Munir Nazir, but was told by Defendant Susan Gorski and the attending staff that Dr. Nazir was unavailable. No notation was made on her exam report of her interest in cerclage placement or her history of cerclage placement.

37.     Instead of referring Plaintiff for cerclage placement, Defendant Dr. Gimovsky, the attending perinatologist, recommended an anatomical survey at 18-21 weeks despite Plaintiff's history of loss of pregnancy at 17-18 weeks as had been notated by both Dr. Gimovsky and Dr. Nazir during Plaintiff's successful 2016 pregnancy.

38.     On August 17, 2019 Plaintiff again presented at NHCH and discussed cerclage placement with staff there. At this point Plaintiff was fourteen weeks and four days pregnant, while cerclage placement indicated by medical history are recommended at twelve to fourteen weeks.

39.     Defendant Dr. Onejeme finally referred Plaintiff to see Maternal Fetal Medicine for cerclage placement on August 17th, 2019.

40.     Just four days later, on August 21, 2019 Plaintiff reported to the Temple University Hospital Emergency Room with vaginal bleeding. She was diagnosed with inevitable miscarriage due to cervical insufficiency and was told that the fetus would have to be evacuated.

41.     It was also at this time that Plaintiff learned from attending physicians who performed the inevitable evacuation procedure that the fetus was a viable female. The experience

of undergoing the evacuation abortion and the loss of what would have been her first daughter caused the Plaintiff to suffer great emotional harm and damages which persist to this day.

42.     Following the loss of her pregnancy Plaintiff returned to NBIMC where she finally was able to speak to Dr. Munir Nazir, who informed her verbally that had he been informed of her July 30, 2019 visit and request for information on cerclage placement that he would have recommended and performed that procedure promptly.

### COUNT I – MEDICAL NEGLIGENCE
*Plaintiff v. United States of America*

43.     Plaintiff incorporates all the above paragraphs as though fully set forth and restated herein.

44.     At all times relevant herein, NCHC was a Federally Qualified Health Center providing medical care and treatment at seven locations in Newark, East Orange, Irvington and Orange, New Jersey, with a principal place of business located at 741 Broadway in Newark, NJ 07104, and holding itself out to the general public as a facility providing reasonably competent medical care and employing reasonably skilled medical personnel.

45.     As a Federally Qualified Health Center, claims that would be brought against NCHC must instead be brought against Defendant the United States of America.

46.     NCHC, as a partnership, association and/or professional corporation engaged in providing medical services, owed a duty to provide its patients with reasonably competent medical personnel who exercise the requisite degree of skill, care and judgment exercised by other similarly credentialed medical personnel in their profession.

47.     From June to August 2019, Plaintiff received prenatal care and treatment from NCHC through its employees and independent contractors practicing medicine in its facilities,

which resulted in an inevitable miscarriage due to cervical insufficiency and consequent abortion on August 21, 2019.

48.     Medical professionals employed by and practicing medicine at NCHC did so negligently and carelessly examine and/or treat Plaintiff so as to fail to obtain and/or notate an accurate medical history of prior pregnancies, including but not limited to history of loss of pregnancy at 17-18 weeks, and surgical history, including but not limited to history of cerclage placement.

49.     Had Dr. Onejeme and the other agents and surrogates of NCHC learned that Plaintiff had undergone a prior cerclage placement prior to the birth of her son in 2016, they should have known that in order to preserve Plaintiff's new pregnancy they should have planned immediately to order a new cerclage for Plaintiff at 12 weeks gestation.

50.     The failure of NCHC to obtain and notate Plaintiff's relevant medical history resulted in a failure to refer Plaintiff for cerclage placement at 12-14 weeks, as would have been indicated by proper notation and review of Plaintiff's obstetric and surgical history on June 15, 2019 and July 20, 2019.

51.     The failure to refer Plaintiff for cerclage placement at 12-14 weeks was a breach of the standard of care that caused Plaintiff to suffer a miscarriage due to cervical insufficiency and consequent abortion on August 21, 2019.

52.     As a direct and proximate result of the negligence of NCHC, Plaintiff was deprived of appropriate medical treatment and was caused to suffer the loss of her pregnancy and was caused to sustain and did sustain serious and permanent injuries and was caused to incur medical expenses and was otherwise damaged.

53.     Defendant United States is liable for the negligence of Newark Community Health Centers, Inc., as a Federally Qualified Health Center, as well as its agents, servants and/or employees.

WHEREFORE, Plaintiff Jeree Webster demands judgment against Defendant United States in the amount of her damages, together with interest and cost of suit.

## COUNT II – MEDICAL NEGLIGENCE
*Plaintiff v. Martin Gimovsky, M.D., Susan Gorski, R.D.M.S.,*
*and John/Jane Does (1-10)*

54.     Plaintiff incorporates all the above paragraphs as though fully set forth and restated herein.

55.     Plaintiff brings this claim against Defendant Dr. Gimovsky, Defendant Susan Gorski, R.D.M.S., and Defendant John/Jane Does (1-10) for their actions in providing medical care to Plaintiff at NBIMC which failed to meet the acceptable standards of medical care.

56.     As a direct and proximate result of the negligence and carelessness of Defendant Dr. Gimovsky and Defendant John/Jane Does (1-10), Plaintiff experienced great pain and suffering and serious and permanent injuries.

57.     The negligent and careless actions of Defendant Dr. Gimovsky and Defendant John/Jane Does (1-10) included the following:

a.     failing to obtain and/or document a complete obstetric and surgical history for Plaintiff;

b.     failing to review and incorporate into exam reports prior NBIMC medical charts for Plaintiff including but not limited to ER reports, exam reports from Plaintiff's successful 2016 pregnancy and operative reports;

c.     failing to notify Dr. Munir Nazir of Plaintiff's request to speak with him and/or her requests for cerclage placement and/or her having presented to NBIMC with a new pregnancy and diagnosis of chronic hypertension;

d.     failing to refer Plaintiff for cerclage placement;

10

e.    delays in ordering and initiating urgently needed medical treatment; and,

f.    failing to conform to the requisite standards of care.

58.    Defendant Susan Gorski breached the standard of care by failing to notate and act upon Plaintiff's history of cerclage placement and request for same during her first trimester sonogram.

59.    Defendants Dr. Gimovsky, Susan Gorski, R.D.M.S., and Defendant John/Jane Does (1-10) had a duty to Plaintiff to render reasonable, competent, proper, adequate and appropriate medical and diagnostic care, advice, services and treatment and to take appropriate measures to avoid harm to Plaintiff in a safe manner in accordance with acceptable medical standards.

60.    Plaintiff relied upon the medical knowledge, treatment and advice of Defendants Dr. Gimovsky, Susan Gorski, R.D.M.S., and Defendant John/Jane Does (1-10).

61.    The negligence of Defendants Dr. Gimovsky, Susan Gorski, R.D.M.S., and Defendant John/Jane Does (1-10) was the proximate cause of Plaintiff's injuries, specifically the loss of her pregnancy.

62.    The aforesaid injuries and losses of Plaintiff were caused by the negligence, carelessness and tortious conduct of the Defendants, acting individually and in concert and within the course and scope of their employment, authority or apparent authority.

WHEREFORE, Plaintiff demands judgment against Defendants for the damages resulting from Plaintiff's injuries including without limitation Plaintiff's hospital medical fees and expenses, compensatory damages, pain and suffering, loss of enjoyment, loss of life's pleasures, interests and costs and such other relief as the Court deems just.

## COUNT III – RESPONDEAT SUPERIOR
*Plaintiff v. Newark Beth Israel Medical*
*Center, RWJ Barnabas Health and ABC Employers (1-10)*

63.     Plaintiff incorporates all the above paragraphs as though fully set forth and restated herein.

64.     At all times relevant hereto, Defendants Dr. Gimovsky, Susan Gorski, R.D.M.S., and Defendant John/Jane Does (1-10) were employees, agents, contractors or authorized third-parties operating on behalf of and with the permission of Defendant Newark Beth Israel Medical Center, Defendant RWJ Barnabas Health and/or Defendant ABC Employers (1-10) and defendants were working within the course and scope of their employment, authority or apparent authority.

65.     Defendants Newark Beth Israel Medical Center, RWJ Barnabas Health and ABC Employers (1-10) are therefore vicariously liable for the conduct of the defendants.

Wherefore, Plaintiff demands judgment against defendants for the damages resulting from Plaintiff's injuries including without limitation Plaintiff's hospital medical fees and expenses, compensatory damages, pain and suffering, interests and costs and such other relief as the Court deems just.

## COUNT IV – MEDICAL NEGLIGENCE
*Plaintiff v. Afamefune Onejeme, M.D.*

66.     Plaintiff incorporates all the above paragraphs as though fully set forth and restated herein.

67.     At all times relevant hereto, Defendant Dr. Onejeme was a medical doctor who practiced obstetrics and gynecology as an independent contractor at the medical facility of Newark Community Health Centers, Inc.

68.     Dr. Onejeme, as a medical doctor licensed by and practicing in the State of New Jersey, owed a duty to perform all necessary procedures to properly diagnose and/or treat his patients with the requisite degree of skill, care and judgment exercised by other physicians and/or medical providers practicing in the profession.

69.     Defendant United States is liable for the negligence of Newark Community Health Centers, Inc., as a Federally Qualified Health Center, as well as its agents, servants and/or employees, including Dr. Afamefune Onejeme.

70.     While practicing obstetrics and gynecology at NCHC, Dr. Onejeme utilized and relied upon his own professional training, experience, and independent discretion to make medical decisions for his patients.

71.     Dr. Onejeme did so negligently and carelessly examine and/or treat Plaintiff so as to fail to obtain and/or notate on exam reports Plaintiff's full obstetric history, including but not limited to history of loss of pregnancy at 17-18 weeks, and surgical history, including but not limited to history of cerclage placement, and so as to fail to refer Plaintiff for cerclage placement at 12-14 weeks as would have or should have been indicated by such an obstetric and/or surgical history.

72.     The failure of Dr. Onejeme to obtain and notate Plaintiff's relevant medical history resulted in a failure to refer Plaintiff for cerclage placement at 12-14 weeks, as would have been indicated by proper notation and review of Plaintiff's obstetric and surgical history.

73.     Dr. Onejeme's failure to refer Plaintiff for cerclage placement at 12-14 weeks was a breach of the standard of care that caused Plaintiff to suffer a miscarriage due to cervical insufficiency and consequent abortion on August 21, 2019.

74.     As a direct and proximate result of the negligence of Dr. Onejeme, Plaintiff was deprived of appropriate medical treatment and was caused to suffer the loss of her pregnancy and was caused to sustain and did sustain serious and permanent injuries and was caused to incur medical expenses and was otherwise damaged.

WHEREFORE, Plaintiff demands judgment against Defendants for the damages resulting from Plaintiff's injuries including without limitation Plaintiff's hospital medical fees and expenses, compensatory damages, pain and suffering, loss of enjoyment, loss of life's pleasures, interests and costs and such other relief as the Court deems just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, attorneys Jack Meyerson and Matthew Miller are designated as trial counsel for Plaintiffs in the above matter.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of our knowledge or belief. Also, to the best of our belief, no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading, we know of no other parties that should be joined in the above action.

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to Rule 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets. This demand shall include and cover not only primary coverage, but also any and all excess, catastrophe and umbrella policies.

## DEMAND FOR MALPRACTICE CASE DISCOVERY

Demand is made that the defendant physicians named herein provide to plaintiff's attorney answers to the Form C(3) Uniform Interrogatories To Be Answered by Defendant Physicians in Medical Malpractice Cases.

## DEMAND FOR TRANSCRIPTION AND OFFICE RECORDS

Plaintiff hereby demands that the Defendants produce a certified copy of all office records, telephone calls, billing and payments as well as a typed transcription of any and all of his handwritten office records and/or hospital records, within thirty (30) days of service of the Complaint.

Respectfully submitted,

Jack Meyerson (No. 781990)
Matthew Miller (No. 043462010)
MEYERSON & O'NEILL
1600 Market Street, Ste. 1305
Philadelphia, PA 19103

15